IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01559-WJM-KLM

J&J SPORTS PRODUCTIONS, INC., as Broadcast Licensee of the November 13, 2010 Pacquaio/Margarito Broadcast,

　　Plaintiff,

v.

JIMMY L. TWISS, individually and d/b/a Twisters Restaurant & Cantina, a/k/a Twister Restaurant,

　　Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　This matter is before the Court on **Plaintiff's Motion for Default Judgment** [Docket No. 10; Filed September 12, 2011] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for recommendation [#16]. The Court has reviewed the Motion, the Complaint, the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons stated below, the Court respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED**.

**I. Factual and Procedural Background**

　　Plaintiff initiated this lawsuit on June 15, 2011, pursuant to two provisions of the Federal Communications Act ("FCA"), 47 U.S.C. §§ 553 and 605. [#1] at 1. Plaintiff alleges that Defendant Twiss, individually and through his sole proprietorship Twisters Restaurant & Cantina ("Twisters"), unlawfully intercepted and exhibited a televised boxing match between Manny Pacquaio and Antonio Margarito on November 13, 2010

("Broadcast"). *Id.* at 4. Plaintiff asserts that it had the right to distribute the Broadcast "via closed circuit television and via encrypted satellite signal," and entered into agreements with commercial establishments in Colorado allowing those entities to exhibit the Broadcast. *Id.* Defendant Twiss did not enter into an agreement with Plaintiff, yet publicly exhibited the Broadcast "for the purposes of direct or indirect commercial advantage or private financial gain." *Id.* at 4, 6.

Defendant Twiss was served with a copy of a summons and the Complaint on July 8, 2011 [#5]. His answer or other response to the Complaint was due on or before July 29, 2011. *Id.* To date, no answer has been filed on the docket, nor has Defendant Twiss requested an extension of time in which to do so. Defendant Twiss has not appeared in this matter.

On motion by Plaintiff, the Clerk of Court entered default against Defendant Twiss (and the subsequently dismissed Defendant Eva Marie Twiss [#14]) on September 12, 2011 [#9]. Plaintiff filed the Motion at issue on the same date [#10]. Plaintiff seeks entry of default judgment against Defendant Twiss, individually and doing business as Twisters, in the total amount of $47,490.50 [#10-7].

## II. Analysis

Pursuant to Fed. R. Civ. 55, default may enter against a party who fails to appear or otherwise defend the case brought against him. However, even after an entry of default, the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *See Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (unpublished decision) (citations omitted). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Id.* at *2

(quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

**A.    Jurisdiction**

In determining whether the entry of default judgment is warranted here, the Court must first consider whether the Court has subject matter and personal jurisdiction over the lawsuit. *Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). The Court must do so in consideration of the well-established law that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." *Williams*, 802 F.2d at 1203.

Plaintiff asserts that Sections 553 and 605 of the FCA provide the legal basis for the lawsuit, thus subject matter jurisdiction is proper pursuant to federal question jurisdiction as prescribed by 28 U.S.C. § 1331. [#1] at 1-2. Regarding personal jurisdiction, "[P]laintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assoc., Inc.*, 115 F.3d at 773. Defendant Twiss' residence and Twisters' principal place of business are both located in Colorado Springs, Colorado, and the alleged statutory violation took place within the District of Colorado. [#1] at 2-3. Therefore, the Court is satisfied that it may exercise personal jurisdiction over Defendant Twiss.

**B.    Default Judgment**

As an initial matter, the Court confirms the propriety of entry of default. Fed. R. Civ. P. 55(a) prescribes that "the clerk must enter the party's default" if "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Here,

Defendant Twiss was properly served, and his answer or other response to Plaintiff's Complaint was due on or before July 29, 2011 [#5].  Defendant Twiss did not answer or otherwise respond (or appear in this matter at all), thus he has failed to plead or otherwise defend the lawsuit.  Therefore, entry of default against Defendant Twiss on September 12, 2011 [#9] was proper.

Before recommending entry of default judgment, the Court must decide "whether the unchallenged facts create a legitimate basis for . . . entry of a judgment."  *Greenwich Ins. Co.*, 2008 WL 793606 at *1 (citations omitted).  "[A] party is not entitled to a default judgment as of right; rather the entry of default judgment is entrusted to the 'sound judicial discretion' of the court."  *Id.* at *2 (quoting *Cablevisions of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).  Where the complaint states an adequate legal basis for relief against a party in default, default judgment is appropriate.  *Id.* (citing *Weft, Inc. v. G.C. Inv. Assocs.*, 430 F. Supp. 1138, 1143 (E.D.N.C. 1986)).

Upon review of a motion for default judgment, assuming default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation.  The Court deems the well-pled facts (as opposed to merely conclusory statements) of the Complaint in this matter to be true.  *Id.* at *1 (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits.  *Id.*  When assessing damages, however, the Court must establish the amount that the moving party is entitled to recover.  *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984).  Whether to conduct a hearing for the purpose of ascertaining damages is discretionary; the Court need not conduct a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation."  *Held v. Shelter Sys. Group Corp.*, No. 93-1225, 1994 WL

47157, at *1 (10th Cir. 1994) (unpublished) (citing *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)).

### 1. Findings of Fact

In consideration of the above-stated deferential pleading interpretation, the Court summarizes the following facts from the Complaint [#1], the sworn affidavit of Joseph Gagliardi, who is the President of Plaintiff [#10-1], and the exhibits accompanying Mr. Gagliardi's affidavit.

Plaintiff owns the rights for the commercial distribution of the Broadcast, and marketed the sub-licensing of the Broadcast for a fee to commercial establishments in Colorado. *Aff.*, [#10-1] at 1. The Broadcast was distributed "via closed circuit television and via encrypted satellite signal. The Broadcast originated via satellite uplink, and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." [#1] at 4. To ensure that the Broadcast was not being shown by unlicensed establishments through illegal interception means, Plaintiff hired an auditing company to visit locations that had not entered into sub-licensing agreements with Plaintiff on the date of the Broadcast. [#10-1] at 1-2. Defendant Twiss and Twisters did not enter into a sub-licensing agreement with Plaintiff. *Id.* at 2.

An auditor hired by Plaintiff visited Twisters on November 13, 2010, at approximately 10:29 p.m. *Id.*[1] The auditor paid a $5.00 cover charge to enter Twisters, and observed that one of the six televisions in Twisters was exhibiting a portion of the Broadcast to approximately 90 patrons. *Id.* The auditor video-recorded the showing of the Broadcast

---

[1] Mr. Gagliardi refers to the date at issue as November 13, 2011. The Court believes that this is a typographical error, as the affidavit is dated September 7, 2011, and the Complaint refers to November 13, 2010. The Court concludes that November 13, 2010, is the correct date.

at Twisters.  *Id.*  The auditor estimated Twister's total capacity at 201-300 patrons.  *Id.*

Defendant Twiss is the principal of Twisters.  [#1] at 3.  On November 13, 2010, Defendant Twiss had supervisory capacity and control over the activities occurring within Twisters, exercised close control over the internal operating procedures and employment practices of Twisters, and received a financial benefit from the operations of Twisters.  *Id.*  Because Plaintiff did not have a sub-licensing agreement with Twisters for the exhibited Broadcast, Plaintiff believes that Defendant Twiss illegally accessed the Broadcast through the use of an illegal satellite receiver, the misrepresentation of the business as a residence, or the removal of an authorized receiver from one location to a different location.  *Id.* at 5.  Without discovery, Plaintiff is unable to determine exactly how Defendant Twiss intercepted the Broadcast.  *Id.*  Plaintiff contends that Defendant Twiss intercepted and exhibited the Broadcast for the purposes of direct or indirect commercial advantage or private financial gain.  *Id.* at 4.  Plaintiff asserts that the unlicensed and illegal showing of the Broadcast at Twisters by Defendant Twiss violates 47 U.S.C. §§ 553 and 605, and Plaintiff is entitled to damages, including fees, pursuant to 47 U.S.C. § 605(a).  *Mem.*, [#10-4] at 18.

### 2.   Statutory Claims

Count I of the Complaint alleges a violation of 47 U.S.C. § 605, which governs radio and satellite communications.  Section 605(a) prohibits the unauthorized divulgence of transmitted interstate or foreign communication by wire or radio.  The well-pled facts in the Complaint and Affidavit of Mr.  Gagliardi assert that Defendant Twiss was not authorized to exhibit the Broadcast at Twisters, but Defendant Twiss did so nonetheless.  The Broadcast, transmitted by satellite and by cable, could have been intercepted by Defendant Twiss only through illegal means.  [#1] at 5; *Aff.*, [#10-1] at 3.  Therefore, Plaintiff has met the statutory requirements for liability under Section 605(a).  *See Kingvision Pay-Per-View,*

*Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1183 (D. Colo. 2008) (same).

In the alternative to damages pursuant to Count I and Section 605(a), Plaintiff asserts in Count II that Defendant Twiss violated 47 U.S.C. § 553, and should pay damages pursuant to that statutory provision. [#1] at 7. The plain language of Section 553 specifically prohibits the unauthorized interception or receipt of communications over a cable system. As the Broadcast was transmitted via cable and satellite, and Defendant Twiss could have intercepted the Broadcast only by illegal means, Plaintiff has also satisfied the statutory requirements for liability under Section 553. *Id.* at 4; *see Gutierrez*, 544 F. Supp. 2d at 1183 (same).

### 3. Damages

As described above, Section 553 of the FCA governs the unauthorized interception or receipt of cable service, and Section 605(a) of the same Act governs the unauthorized use of radio or satellite communications. Plaintiff explains how the Broadcast "originated via a satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal," and "Plaintiff distributed the event via closed circuit cable television." [#10-4] at 5. Plaintiff appropriately informs the Court that some disagreement exists in the Circuits (namely, between the Second and Third Circuit Courts of Appeals) as to whether Sections 605 and 553 both govern the interception of cable television distributed in the manner at issue in this case, or whether only Section 553 applies in these circumstances. [#10-4] at 6. Plaintiff states that to date, the Tenth Circuit has not made a determination on this issue.[2] *Id.*

---

[2] The Court's research reveals that Plaintiff is correct: the Tenth Circuit has not directly evaluated whether Section 605(a) applies to the interception of satellite-derived cable television transmissions. The Tenth Circuit has determined that "§ 605 is designed to protect a broad array of communications, including television signal transmissions via satellite." *DIRECTV, Inc. v.*

7

Whether Section 605 applies to the interception of cable television impacts the severity of statutory damages available to Plaintiff in this matter. *See Gutierrez*, 544 F. Supp. 2d at 1184 ("While Plaintiff has set forth the elements of liability for both statutes, recovery under both section 553 and section 605 is improper."). Here, Plaintiff is aware that Defendant may be liable pursuant to either of the statutes at issue, but not both. *See* [#1] at 7. Plaintiff requests statutory damages and fees, in the first instance, pursuant to Section 605. *Id.* In its Motion, Plaintiff asks for the entry of default judgment pursuant to Section 605 only. *See* [#10]; [#10-4] at 9-10.

Plaintiff asks the Court to follow the Second Circuit's conclusion in *International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996). The *Sykes* Court held that Section 605 of the FCA applied to the "distribution of descramblers for the interception of cable television," and to satellite-originated transmissions generally. 75 F.3d at 133. However, the Third Circuit arrived at the opposite conclusion in *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196 (3d Cir. 2001). The Third Circuit concluded that Section 553 was "specifically designed . . . to combat decoder box piracy of satellite-delivered cable services." 267 F.3d at 205. The Third Circuit expressly rejected the *Sykes* Court's holding, and found that Section 605 "encompasses the interception of satellite transmissions to the extent reception or interception occurs prior to or not in connection with, distribution of the service of a cable system, and no more." *Id.* at 207.

---

*Crespin*, 224 F. App'x 741, 752 (10th Cir. 2007) (citing *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196 (3d Cir. 2001)). Additionally, the Tenth Circuit affirmed a Kansas trial court's application of Section 605(a) to the interception and use of satellite television programming in *DIRECTV, Inc. v. Turner*, 249 F. App'x 27 (10th Cir. 2007). The *Turner* trial court cited to *International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996) in support of its conclusion that the television satellite transmissions giving rise to the facts of *Turner* constituted radio communications, thus Section 605(a) applied to the allegations that the *Turner* defendant intercepted DIRECTV's satellite television signal. Neither *Crespin* nor *Turner* include allegations related to cable transmissions; both cases address satellite television only.

8

Pursuant to Plaintiff's representations regarding the mechanics of the Broadcast, it appears to the Court that the Broadcast utilized both satellite and cable communications. Plaintiff does not know how Defendant Twiss intercepted the Broadcast, and this absence of clarity is exacerbated by Defendant Twiss' default and the resulting lack of discovery. Defendant Twiss may have intercepted the Broadcast by misuse of a cable (perhaps through the splicing of an existing cable line), or by illegally redirecting a lawfully-obtained satellite transmission from a residence to his business.[3]  See [#10-4] at 9; [#1] at 7.  The Court is thus satisfied that awarding damages to Plaintiff pursuant to Section 605(a) (as requested, and not in addition to damages pursuant to Section 553) is permissible, because Plaintiff describes means of illegal interception available to Defendant Twiss that would implicate Section 605(a) under either *Sykes* or *TKR Cable Co.*[4]

Plaintiff requests statutory damages in the amount of $10,000 pursuant to Section 605(e)(3)(C)(i)(II), and enhanced damages in the amount of $35,000 pursuant to Section 605(e)(3)(C)(ii), in consideration of Defendant Twiss' allegedly willful violation for purposes of commercial advantage and financial gain.

---

[3] The auditor stated that a DIRECTV satellite dish was visible on Twisters' premises.  [#10-1] at 22.

[4] The adjudication of motions for default judgment in other cases filed in this District by Plaintiff under similar (if not identical) circumstances have resulted in damages awarded pursuant to Section 605(a).  See *J & J Sports Prods., Inc., v. Hernandez*, Case No. 11-cv-00443-RPM, Docket No. 9 (order entering default judgment against Defendant in the total amount of $47,079, including enhanced statutory damages pursuant to Section 605(a)); *J & J Sports Prods., Inc. v. Rosales*, No. 07-cv-01113-RPM-MEH, 2008 WL 553292 (D. Colo. Jan. 30, 2008) (recommending damages pursuant to Section 605); *J & J Sports Prods., Inc. v. Cervantes*, No. 07-cv-01114-RPM-MEH, 2008 WL 583879 (D. Colo. Jan. 30, 2008) (same); *J & J Sports Prods., Inc. v. Rosales*, No. 07-cv-01110-RPM-MEH, 2008 WL 596104 (D. Colo. Jan. 30, 2008) (same).

### *i.* ***Statutory Damages***

Section 605(e)(3)(C)(i)(II) provides that the Court may award damages "for each violation of [Section 605(a)] involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." Like the court in *Gutierrez*, this Court finds that Defendant Twiss' interception of the Broadcast is one violation, because "most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." 544 F. Supp. 2d at 1184 (citation omitted). Also consistent with other cases of this nature resulting in default judgment in this District, the Court finds that the appropriate method for calculating statutory damages is to attribute a flat sum to the single violation. *See id.*

The *Gutierrez* Court considered the analysis in *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) in determining an appropriate flat sum. *Id.* In *Jasper Grocery*, the court awarded statutory damages in the amount of $5,000 as a flat sum, considering that the "figure is well in excess of the probable licensing fee and it is more than the store would have made in profits on a per-customer basis." 152 F. Supp. 2d at 442. The court in *Jasper Grocery* further explained that the sum of $5,000 "represent[ed] a recognition that maximum statutory damages should be reserved for cases where there is evidence of more substantial injury to the plaintiff or profit by the defendants." *Id.*

Here, Plaintiff represents that the licensing fee would have been $6,200 (had Defendant Twiss entered into an agreement with Plaintiff to exhibit the Broadcast), based on an occupancy of 201-300 patrons. [#10-4] at 16. The auditor indicated that he paid a $5.00 cover charge to enter Twisters on November 13, 2010, and there were approximately 90 people viewing the Broadcast. [#10-1] at 23.

The Court agrees with Plaintiff's position that imposing the maximum statutory damages serves the interests of making Plaintiff whole (related to the projected licensing fee) and deterring future similar behavior, and provides symbolic compensation to customers who patronized establishments which lawfully exhibited the Broadcast. *See* [#10-4] at 16. Considering the probable licensing fee, the profit gained by the cover charge collected at Twisters, and the presumed profit associated with the patronage of 90 people (in terms of food and drink) while viewing the Broadcast, the Court recommends an award of statutory damages in the maximum amount of $10,000.[5]

### ii.    *Enhanced Statutory Damages*

In addition to statutory damages, Plaintiff requests enhanced damages in the amount of $35,000 pursuant to Section 605(e)(3)(C)(ii), for Defendant Twiss' allegedly willful violation of Section 605(a) for the purposes of commercial advantage and financial gain. Section 605(e)(3)(C)(ii) prescribes that if "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." To receive enhanced damages, Plaintiff must prove that Defendant Twiss' display of the Broadcast was willful and for "purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

---

[5] Like the court in *Jasper Grocery*, this Court awards statutory damages "well in excess of the probable licensing fee," which in this case is $6,200. 152 F. Supp. 2d at 442. "[A] damage award based exclusively on licensing fees would undercompensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that [plaintiff] can charge for sublicenses." *Id.* Thus, the statutory damages award recommended herein exceeds the licensing fee and reflects the additional considerations described above.

Courts typically consider the following factors in evaluating a request for enhanced damages: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." *Gutierrez*, 544 F. Supp. 2d at 1185 (citing *Kingvision Pay-Per-View, Ltd. v. Recio*, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted)).

Plaintiff has presented strong evidence demonstrating the willfulness of the interception at issue. Accepting Plaintiff's allegations as true in light of Defendant Twiss' default, Defendant Twiss exerted supervisory capacity and control over Twisters on the relevant date and used Twisters as a means for individual financial gain; and further, Defendant Twiss imposed a cover charge for entry to Twisters on the date of the Broadcast, which he illegally accessed. However, Plaintiff does not adduce any evidence indicating that Defendant Twiss had previously committed such a violation, advertised the Broadcast, or charged inflated prices for food or drink during the Broadcast. Nevertheless, the Court believes that an enhanced award is appropriate for the purpose of deterring any future violation. *See Gutierrez*, 544 F. Supp. 2d at 1185 (similar analysis).

The statutory text providing for enhanced damages limits such damages to no more than $100,000. Here, Plaintiff requests $35,000. The Court accepts Plaintiff's suggestion as reasonable; the amount is slightly over treble the statutory damages, addresses Defendant Twiss' willfulness, should serve as a deterrent regarding the potential for future violations, and is only one third of the maximum permissible amount. The Court thus recommends an award of $35,000 as enhanced damages pursuant to Section

605(e)(3)(C)(ii).[6]

### iii. Attorney's Fees and Costs

Plaintiff, as the prevailing party in this Section 605(a) action, is entitled to its reasonable attorney's fees and costs pursuant to Section 605(e)(3)(B)(iii). Counsel for Plaintiff provided an affidavit in support of her fee request in the amount of $1,690.50. [#10-2]. Counsel for Plaintiff represented that Plaintiff has incurred $800.00 in costs, including the filing fee and the fee for service on Defendants. *See id.* The Court finds that these amounts are reasonable and recommends an award of fees and costs in the total amount of $2,490.50.

### III. Conclusion

In sum, the Court finds that $10,000, the statutory maximum, is an appropriate award of statutory damages as a flat sum for Defendant Twiss' single violation of 47 U.S.C. § 605(a) pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); $35,000 is a reasonable award of enhanced damages in consideration of Defendant Twiss' willfulness pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and Plaintiff should be awarded its reasonable attorney's fees and costs in the amount of $2,490.50 pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). Accordingly,

The Court respectfully **RECOMMENDS** that Plaintiff's Motion for Default Judgment [#10] be **GRANTED**; and judgment be entered against Defendant Twiss, individually and doing business as Twisters, in the total amount of $47,490.50.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written

---

[6] In *Hernandez*, the court entered default judgment against the defendant for the same dollar amounts, $10,000 in statutory damages and $35,000 as enhanced damages. *See* Case No. 11-cv-00443-RPM, Docket No. 9 at 2.

objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: March 2, 2012

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge